1
2
3
4
5
6
7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MORIANO MILLARE,                        Case No.   2:20-cv-01297-JDP (PC)

12                  Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                             THAT DEFENDANTS' MOTION TO
13        v.                                 DISMISS BE:

14   M. VIRREY, *et al.*,                    (1) DENIED WITH RESPECT TO
                                                 PLAINTIFF'S FIRST AMENDMENT
15                  Defendants.                  CLAIMS; AND

16                                           (2) GRANTED WITH RESPECT TO
                                                 PLAINTIFF'S RLUIPA CLAIMS.
17

18                                           ECF No. 21

19                                           OBJECTIONS DUE IN FOURTEEN DAYS

20

21        Plaintiff is a Muslim state prisoner proceeding without counsel in this civil rights action

22   brought under 42 U.S.C. § 1983.  In his first amended complaint, he alleges that defendant M.

23   Muslim wrongfully terminated him from the prison's Religious Diet Program.  He alleges that

24   defendants Muslim and Virrey refused to let him back into to the program even though they knew

25   that his termination had been a mistake.[1]  Consequently, plaintiff was deprived of access to a

26   ─────────────────────
          [1] I previously screened the amended complaint and notified plaintiff that his claims
27   against defendants Johnson, Kesterson, and Hodges were not cognizable.  ECF No. 10.  I
     informed him that he could either file an amended complaint or proceed only with his claims
28   against Muslim and Virrey; he chose the latter course.  ECF No. 11.

                                           1

1  Halal diet and of the ability to observe Ramadan.

2          Plaintiff alleges that these acts amount to conscious and deliberate deprivations of his

3  rights under both the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the

4  Free Exercise Clause of the First Amendment.  Defendants have filed a motion to dismiss on the

5  grounds that plaintiff's allegations fail to state a claim for which relief may be granted.[2]

6                                **Motion to Dismiss Standard**

7          "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable

8  legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v.*

9  *Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  Rule 8 of the Federal Rules of Civil Procedure

10  requires a complaint to contain "a short and plain statement of the claim showing that the pleader

11  is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must

12  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

13  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

14  544, 570 (2007)).  A claim has facial plausibility when a plaintiff "pleads factual content that

15  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

16  alleged."  *Iqbal*, 556 U.S. at 678.

17          The court construes a pro se litigant's complaint liberally, *see Haines v. Kerner*, 404 U.S.

18  519, 520 (1972) (per curiam), and will only dismiss a pro se complaint "if it appears beyond

19  doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

20  relief," *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (quoting *Nordstrom v.*

21  *Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)).  The rule of liberal construction is "particularly

22  important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In

23  giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential

24  elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673

25  F.2d 266, 268 (9th Cir. 1982).

26

27  _____

28          [2] Plaintiff has filed an opposition, ECF No. 22, and defendant has filed a reply, ECF
No. 23.

1
**Background**

2      Plaintiff is a practicing Muslim who was incarcerated at Deuel Vocational Institution

3  ("DVI").  ECF No. 9 at 1, 12.  For nearly a decade, he participated in DVI's Religious Diet

4  Program ("RDP"), which provides Muslim prisoners a specialized Halal diet subject to the terms

5  of the RDP Agreement.  *Id*. at 12.  That agreement prohibits participating inmates from

6  purchasing unapproved foods, and inmates who violate the agreement twice in a six-month period

7  can be removed from the program.  *Id*. at 12-14, 42; *see* Cal. Code Regs. tit. 15, § 3054.5

8  (providing that "a first violation of the [RDP] Agreement shall result in a warning issued to the

9  inmate, and a second violation within six months of the first violation may subject the inmate to

10  removal from the program").

11      Plaintiff alleges that in February 2019, defendant Muslim, a chaplain at DVI, issued a

12  notice that plaintiff had violated the RDP agreement by purchasing "seasoned shredded beef" in

13  December of the prior year.  ECF No. 9 at 12-13.  Plaintiff objected that the shredded beef was

14  Halal and so should not violate the RDP agreement.  *Id*. at 13.  Defendant Muslim allegedly

15  agreed that the violation, which was plaintiff's first, had been a mistake, and assured plaintiff that

16  he would not be charged with a violation.  *Id*. at 13, 38.

17      In March of 2019, plaintiff purchased a non-Halal sausage for a canteen worker in

18  exchange for that worker expediting the remainder of plaintiff's purchase.  *Id*. at 13-14.  For this,

19  defendant Muslim issued a "second notice of noncompliance" and informed plaintiff of his

20  immediate termination from the RDP for a six-month period.  *Id*. at 14, 40.  The "first violation"

21  section of the notice was left blank.  *Id*. at 53.  Plaintiff reminded defendant Muslim that he had

22  no prior violations, at which point Muslim told plaintiff that he would be restored to the RDP list.

23  *Id*. at 14-15.  Plaintiff stresses that this occurred on the eve of Ramadan, interfering with his

24  observance of the holiday.  *Id*. at 28, 31.

25      Plaintiff documents a series of appeals and discussions with DVI officials, beginning in

26  late April 2019—after roughly three weeks of waiting for defendant Muslim to reinstate him—

27

28

and continuing until his transfer from DVI in January 2020. *Id*. at 15-24.[3]  Responding in person to plaintiff's first-level appeal, defendant Muslim again allegedly affirmed that the first violation had been a mistake and agreed to grant plaintiff's appeal. *Id.* at 16.  Two weeks after that exchange, while he was still awaiting restoration to the RDP list, plaintiff sought help from defendant Virrey, who allegedly dismissed plaintiff's concerns and urged him to forget about his appeal because he could reapply for the RDP in six months—less time than it would take to process an appeal. *Id*. at 17.[4]

On May 29, after two months without his religious diet, plaintiff was told by defendant Muslim that an audit had revealed a purchase of "Chili No Beans Brushy Creek on Dec 22, 2018." *Id.*  This, Muslim explained, was a violation and would "serve as a corrected version of the first notice of non-compliance." *Id*.  The following day, defendant Muslim and an associate warden at DVI denied plaintiff's appeal at the first administrative level. *Id.* at 18, 49.  Plaintiff denies that the chili violated his religious diet and maintains that, at the time, he repeatedly asked defendants why they believed otherwise; he did not receive an answer. *Id*. at 18, 20, 22.  Plaintiff also requested a complete listing of items that the agreement barred him from purchasing, *id*. at 20, insisting that CDCR staff disagreed about what items were compliant, *id*. at 15 n.2; plaintiff did not receive such a listing.  In an August 1, 2019 interview, defendant Muslim again declined to explain why the chili violated the agreement, instead suggesting that plaintiff's appeal would be granted. *Id*. at 20.  But defendant Muslim did not make good on that promise.

Defendants argue that plaintiff's RLUIPA claims should be dismissed for lack of redressability.  ECF No. 21 at 5-6.  As for the free exercise claims, defendants argue that their conduct was at most negligent and therefore an inadequate basis for a First Amendment claim under § 1983.  *Id.* at 6.  In the alternative, defendants argue that they are entitled to qualified immunity.  *Id*.

---

[3] On January 7, 2020, plaintiff was transferred from DVI to the Correctional Training Facility in Soledad, CA.  ECF No. 9 at 24-25.

[4] Defendant Virrey is the Community Resource Manager at DVI and serves on the Religious Review Committee, which accords her the "authority to grant or recommend approval of religious appeals and religious diet participation or the reinstatement of religious diet participation."  ECF No. 9 at 3.

**Discussion**

A.    **RLUIPA Claims**

Defendants argue that plaintiff's RLUIPA claims should be dismissed because money damages are not available against prison officials in either their official or individual capacities, and because plaintiff's demand for injunctive relief was rendered moot by his transfer to a different facility.  ECF No. 21 at 5-6.

Defendants are correct that plaintiff cannot obtain money damages under RLUIPA. RLUIPA did not waive sovereign immunity from private suits seeking monetary damages against state actors in their official capacities.  *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citing *Sossamon v. Texas*, 563 U.S. 277, 284 (2011)).  RLUIPA also does not allow for suits against state actors in their individual capacities.  *See Wood v. Yordy*, 753 F.3d 899, 902 (9th Cir. 2014).

Under RLUIPA, then, prisoner plaintiffs can only pursue injunctive or declarative relief— remedies that, defendants correctly argue, are moot in this case.  A claim is moot where the complainant "no longer has a legally cognizable interest in a judicial decision."  *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).  In prisoner cases, claims are typically mooted when a plaintiff "is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages."  *Id*.  A transfer or release will moot a claim for injunctive relief unless "the plaintiff has a reasonable expectation of returning to that prison," *Dilley v. Gunn*, 64 F.3d 1365, 1369 (9th Cir. 1995), or "the policy pursuant to which the alleged violation occurred was 'system wide' and one of the defendants was in charge of the policy," *Walker v. Beard*, 789 F.3d 1125, 1132 (9th Cir. 2015) (quoting *Nelson v. Heiss*, 271 F.3d 891, 893 (9th Cir. 2001)).

Defendants argue that plaintiff's injunctive claims are moot because plaintiff was transferred from DVI and "has alleged no facts indicating that he could be transferred back." ECF No. 21 at 6.  Plaintiff counters that he remains subject to the religious diet agreement at his new facility and has not received a list of offending items.  ECF No. 22 at 5.  Without expressing an opinion on the constitutionality of denying plaintiff such a list, it is sufficient at this point to

1    observe that plaintiff has not met the second requirement: naming a defendant in charge of the

2    policy or in charge of implementing the policy at plaintiff's present facility.  *Cf. Walker*, 789 F.3d

3    at 1132 (holding that "transferred prisoner's claim. . . avoid[ed] mootness" where defendant

4    "head of the California prison system. . . was capable of providing relief from system-wide

5    policy").  In the absence of such a defendant, plaintiff's RLUIPA claim is moot.  Accordingly, I

6    recommend that the claim be dismissed with leave to amend.[5]

7            **B.      First Amendment Claim**

8            "The right to exercise religious practices and beliefs does not terminate at the prison

9    door." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987).  Prisoners "retain the protections

10   afforded by the First Amendment, 'including its directive that no law shall prohibit the free

11   exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting *O'Lone

12   v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  The First Amendment is implicated where state

13   actions substantially burden a prisoner's practice of religion by preventing him from engaging in

14   conduct that he sincerely believes is consistent with his faith, whether or not such conduct is

15   "central to" or "mandated by" his faith.  *See id.* at 884 (explaining that "it is the sincerity of

16   [plaintiff's] belief rather than its centrality to his faith that is relevant to the free exercise

17   inquiry").  "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it

18   must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert

19   substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791

20   F.3d at 1031 (internal citations omitted).

21          Nevertheless, "lawful incarceration brings about the necessary withdrawal or limitation of

22   many privileges and rights, a retraction justified by the considerations underlying our penal

23   system." *O'Lone*, 482 U.S. at 348.  An alleged infringement of a prisoner's free exercise rights is

24   therefore "valid if it is reasonably related to legitimate penological interests." *Id.* at 349.  To

25   assess this validity, the Supreme Court has instructed courts to consider: (1) whether there is a

26

27          [5] Plaintiff is advised that the analysis that follows concerns only the actions of defendants
     Muslim and Virrey, and so is likely inapplicable to the implementation of the policy at his present
28   facility.

1  "rational connection between the prison regulation and the legitimate governmental interest put

2  forward to justify it"; (2) whether there are "alternative means of exercising the right";

3  (3) whether and how "accommodation of the asserted constitutional right . . . impact[s] . . . guards

4  and other inmates"; and (4) the "existence of obvious, easy alternatives." *Turner v. Safley*, 482

5  U.S. 78, 89-90 (1987) (internal quotation marks and citations omitted).

6        Plaintiff has plausibly alleged a substantial burden on a sincerely held religious belief.[6]

7  The Ninth Circuit has long held that "inmates . . . have the right to be provided with food

8  sufficient to sustain them in good health that satisfies the dietary laws of their religion."

9  *McElyea*, 833 F.2d at 198; *Ashelman v. Wawrzaszek*, 111 F.3d 674 (1997) (holding policy of

10  supplying Orthodox Jewish prisoners with one frozen kosher dinner supplemented with non-

11  kosher vegetarian or nonpork meals violated prisoners free exercise rights); *Shakur*, 514 F.3d 878

12  (holding that a prison's provision of a vegetarian diet to a Muslim prisoner requesting a Halal

13  meat alternative diet substantially burdened the prisoner's practice of religion where the

14  vegetarian diet caused gastrointestinal issues).  For at least six months, plaintiff alleges that he

15  was denied access to a diet associated with his religion.  *See supra* p. 3-4.  There is little question

16  that such a wholesale deprivation would burden a prisoner's right to the free exercise of his

17  religion.  *See Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008) (holding that "an

18  outright ban on a particular religious exercise is a substantial burden on that religious exercise").

19  The inability to observe Ramadan also would constitute a substantial burden on plaintiff's First

20  Amendment rights.  *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) (holding denial of

21  Ramadan meals for 24 of 30 days a substantial burden); *Washington v. Garcia*, 977 F. Supp.

22  1067, 1074 (S.D. Cal. Sept. 1997) (holding denial of Ramadan meals a substantial burden).

23        Defendants argue that they were at most negligent in administering prison policy, which

24  they claim is not actionable under § 1983.  ECF No. 21 at 6-7 (citing *Hayes*, 849 F.3d at 1214

25  (Bybee, J., concurring) (citing *Lovelace*, 472 F.3d at 201)).  Although the Ninth Circuit has not

26  held that a particular state of mind is necessary to support a free exercise claim under § 1983,

27

28      [6] Plaintiff's sincerity has not been contested and is not in question at this stage, since the Rule 12(b)(6) standard requires the court to accept factual allegations in the complaint as true.

several other circuits and district courts in this circuit have embraced the view expressed in *Lovelace* that negligence is insufficient. *See Mitchell v. Davey*, No. 1:16-CV-01148-DAD-EPG (PC), 2020 WL 2538377 at *4-5 (E.D. Cal. May 19, 2020) (collecting cases). Even assuming that negligence cannot support a free exercise claim, defendants' argument remains unpersuasive. Under a liberal reading of the amended complaint, plaintiff has alleged deliberate action on the part of prison officials. *See* ECF No. 22 at 6-8; *see Hayes*, 849 F.3d at 1218 (Bybee, J., concurring) (explaining that "in order to survive a motion to dismiss—much less prevail on the merits—the plaintiff must allege some kind of deliberate action on the part of prison officials").[7]

Plaintiff alleges that he was denied a Halal diet for at least six months, including during the whole of Ramadan. *See* ECF No. 9 at 31. Defendants do not dispute that the act of terminating plaintiff was deliberate, even if they initially believed it justified. *See* ECF No. 21 at 6-7. They also do not dispute that, for the subsequent two months, they knowingly lacked a justification for continuing to exclude plaintiff from the program. *See id.*; ECF No. 9 at 16, 17. Indeed, plaintiff claims that defendants (1) acknowledged on multiple occasions that his first violation had been issued by mistake and (2) agreed that he should be reinstated—but did not reinstate him. *See* ECF No. 9 at 16, 17, 20, 22. That defendant Muslim undertook an audit of plaintiff's purchases to provide a retroactive justification for the termination only supports the inference that defendants knew that plaintiff had not been accorded a valid warning prior to the second violation, *see id*. at 17, as CDCR regulations require, *see* Cal. Code Regs. tit. 15, § 3054.5 (providing that "a first violation of the [RDP] Agreement shall result in a warning issued to the inmate"). Finally, liberally construed, plaintiff's allegations also support an inference that the "corrected first notice of noncompliance" was a pretextual justification for the deprivation.[8] *See*

---

[7] Defendants' argument places significant weight on the fact that the court, in a prior screening order, dismissed the original complaint. *See* ECF No. 21 at 6-7 (citing ECF No. 5 at 4). But the first amended complaint, filed after that screening order, is the only operative complaint, ECF No. 9, and plaintiff is entitled to considered "judgment on the complaint's own merits." *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (explaining that law of the case doctrine does not constrain a court's reasoning to prior discussion of a no-longer-operative complaint).

[8] Defendants argue that plaintiff "has not contested the validity of the notice[] of non-compliance related to his purchase[] of . . . chili with no beans." ECF No. 21 at 7. But plaintiff

1    *generally* ECF No. 9 at 16-20.  In light of these allegations, I find that plaintiff has alleged

2    deliberate acts that arbitrarily or capriciously infringed his right to the free exercise of his

3    religion.  *See Mitchell*, 2020 WL 2538377 at *3-5 (finding a genuine dispute of fact as to whether

4    the defendant had acted "intentionally, or at least arbitrarily or capriciously" in failing to locate a

5    recently transferred prisoner's Ramadan program authorization form for three weeks).

6        This finding does not preclude defendants from proffering evidence that their actions were

7    rationally related to legitimate penological interests.  *See, e.g.*, *White v. Linderman*, No. CV 11-

8    8152-PCT-RCB, 2013 WL 4496364, at *9 (D. Ariz. Aug. 22, 2013) (denying summary judgment

9    to defendants who rejected plaintiff's request for religious diet accommodation, after analyzing

10    "whether the restriction as applied to Plaintiff relates to a legitimate penological interest")

11    (emphasis added).  Consideration of such an argument is properly reserved for after the Rule

12    12(b)(6) stage.  *See Dunn v. Castro*, 621 F.3d 1196, 1205 n.7 (9th Cir. 2010).

13        **C.**    **Qualified Immunity**

14        Qualified immunity shields government officials from monetary damages unless their

15    conduct violated "clearly established statutory or constitutional rights of which a reasonable

16    person would have known."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v.*

17    *Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).  To assess whether qualified immunity attaches, a

18    court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-

19    moving party, show that the officials' conduct violated a constitutional right, and (2) whether the

20    law at the time of the challenged conduct clearly established that the conduct was unlawful."

21    *Felarca*, 891 F.3d at 815.  "To be clearly established, a legal principle must have a sufficiently

22    clear foundation in then-existing precedent . . . , which means it is dictated by controlling

23    authority or a robust consensus of cases of persuasive authority."  *D.C. v. Wesby*, 138 S. Ct. 577,

24    589-90 (2018) (internal quotation marks and citations omitted).

25        Having addressed the first question above, I turn to whether the right at issue was clearly

26

27    has alleged that he had purchased the chili on many occasions over his ten years in the program, has explained that doing so does not "violate any pillar of plaintiff faith (sic)," and has alleged

28    that defendants repeatedly refused either to explain why the chili violated the agreement or to provide a list of prohibited items.  ECF No. 9 at 12, 18, 20, 22.

established.  It was clearly established in 2018 and for decades prior that "inmates. . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea*, 833 F.2d at 198; *Shakur*, 514 F.3d 878 (discussed *supra* Part B).  Notwithstanding defendants' argument that their actions were at most negligent, plaintiff alleges deliberate and intentional interference with his right to a religious diet.  *See supra* Part B.  Although it may be unsettled whether negligent conduct can support a free exercise claim under § 1983, it is clearly established that deliberate conduct can.  *See Hayes*, 849 F.3d at 1212 (discussed *supra* Part B); *Jones*, 791 F.3d at 1033 (denying qualified immunity to a defendant who, on a single occasion, ordered a Muslim prisoner to cook pork loins as part of his job duties); *Washington v. Brown*, No. CIV S-06-1994, 2010 WL 2737141, at *17 (E.D. Cal. July 12, 2010), report and recommendation adopted, No. CIV S-06-1994-WBS-DAD, 2010 WL 3341645 (E.D. Cal. Aug. 25, 2010) (denying qualified immunity to prison officials who "failed to ensure that plaintiff and his fellow Muslim inmates were placed on the Ramadan fast list").  I therefore find that defendants are not entitled to qualified immunity at this stage.

Accordingly, it is hereby ORDERED that the Clerk of Court shall randomly assign a United States District Judge to this case.

Further, it is RECOMMENDED that defendant's motion to dismiss, ECF No. 21, be denied.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties.  That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:   January 13, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE